**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2590
_____

PAUL PARHAM,

Appellant

v.

EDWARD KLEM; DISTRICT ATTORNEY OF PHILADELPHIA; ATTORNEY
GENERAL OF PENNSYLVANIA


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cv-2211)
District Judge: Honorable J. Curtis Joyner
_____

Argued on April 26, 2012

Before: GREENAWAY, JR., ROTH, and TASHIMA*, <u>Circuit Judges</u>

(Filed: September 14, 2012)

_____


*The Honorable A. Wallace Tashima, Senior United States Circuit Judge for the
Ninth Circuit, sitting by designation.

————

O P I N I O N

————

TASHIMA, <u>Circuit Judge</u>:

Paul Parham filed an "Independent Action To Obtain Relief From Judgment or Order Pursuant to Rule 60(b) F.R.Civ.P." seeking relief from a judgment dismissing his habeas petition as untimely. Parham does not make the difficult showing required for a gateway claim of actual innocence to succeed. Because he does not, we hold that the Rule 60(b) motion fails, and we will affirm the denial of his motion.

**I.**

Anthony Baccari, a white taxi driver, was assaulted at 5:20 a.m., on February 6, 1990. He reported to police that he went to 1331 South 18th Street in Philadelphia in response to a call from dispatch, and that a black male pointed a handgun at him, told him to open the door, and fired a shot into the window which hit him in the chest. Baccari selected a photo of Parham from a folder with three to eight photos of middle-aged black males and from two photo albums with over one hundred photos.

At trial almost a decade later, Parham's defense centered on two arguments. The first was that Baccari was not able properly to identify Parham. Baccari testified that even though it was dark outside when he was shot, it was "[v]ery light" from a city street light. In his closing argument, Parham's attorney argued that Baccari did not make a

2

proper identification because it was dark at the time of the assault, Baccari had very little time to see his assailant's face, and he had just suffered a traumatic experience.

Parham's second argument was that he was not in Philadelphia on the morning of the assault. At the trial, Parham admitted that he had lived at 1331 South 18th Street in Philadelphia but testified that he moved to Norfolk, Virginia, in January 1990. Parham testified that he worked for the Magann Construction Company ("Magann") in Norfolk from February 5-13, 1990, under the assumed name of "Dylan McNair," and that he left Magann when he injured his hand. Parham testified his work hours were "like 6:30 until 3:00 in the afternoon or 2:30 or from 7:00 until 3:00." Parham attempted to introduce a Magann time record, but the court excluded the record as hearsay. In a sidebar conference, Parham's attorney admitted that nobody at Magann could identify Parham's photograph or say that Paul Parham was "McNair." Parham presented testimony from an imam in Norfolk who testified that he saw Parham on February 6, 1990, in Norfolk, and that Parham had a bad hand injury. In his closing argument, Parham's attorney referred to Parham's alibi evidence, but admitted that "I am not going to stand here and say that we have somebody who in a drop dead fashion puts him in Virginia on February 6." Parham's attorney noted in closing argument that the Commonwealth had not brought in any witnesses to testify that Parham was in Philadelphia on the day of the assault.

## II.

On December 17, 1999, the jury convicted Parham of aggravated assault, and Parham was subsequently sentenced to 9-18 years in prison. Parham's conviction became final on October 17, 2001, when the time expired to file his appeal. On April 25, 2005, Parham filed a *pro se* petition for habeas corpus in Federal District Court. The District Court adopted the magistrate judge's report and recommendation ("R&R") that the petition be dismissed as untimely. we denied a certificate of appealability, and the Supreme Court denied certiorari.

In the meantime, Parham filed a petition under the Pennsylvania Post Conviction Relief Act, 42 Pa. Cons. Stat. §§ 9541-46, in February 2006, which was denied as untimely. The Pennsylvania Superior Court denied his appeal and the Pennsylvania Supreme Court affirmed on September 28, 2009.

The next month, Parham filed with this Court an Application for Leave to File Second Petition for Writ of Habeas Corpus. This Court denied that application. *In re Parham*, No. 09-4192 (3d Cir. Dec. 23, 2009).

On December 2, 2010, Parham filed the motion that is the subject of this appeal. The motion seeks reconsideration of the District Court's acceptance of the magistrate judge's R&R. In support of his motion, Parham presents five types of "new" evidence, which he argues constitutes a showing of a gateway claim of actual innocence, which should equitably toll his federal habeas deadline.

4

First, he presents two police reports that were disclosed pre-trial.

Second, he presents a computer-generated payroll record from Magann. The magistrate judge found that this was the payroll record that was excluded as hearsay at the trial. The record states that a "Dylan G. McNair" worked at Magann from February 6 through 9, 1990. An accompanying letter, dated January 6, 2010, signed by Magann's Director of Compliance, explains that "the actual timesheets for the particular project on which Mr. McNair performed work have been destroyed; however the attached computer generated payroll record . . . is a direct reflection of the timesheets for the dates indicated." The letter also instructs the reader to "review the attached Guidance on Interpreting the Payroll Report." This "guidance" page says that McNair worked eight hours on each day.

Third, he presents an "employee index card" from Magann, which does not reflect the times McNair worked at Magann.

Fourth, he presents testimony by an FBI special agent in a different case that "in February of '90 Mr. Parham was working for . . . Magann Construction Company and he was using the name Dylan McNair." The agent testified that Parham "worked there approximately one week during the month of February of 1990 and he had injured his hand and no longer worked there after that because of this injury to his hand," but the agent did not know exactly which week Parham worked for Magann.

Fifth, he presents medical records for Paul Parham and "Dylan McNair." The 1990 record for "Dylan McNair" reflects that "McNair" was treated for an injury to his right

5

thumb for an accident that occurred on February 13, 1990, and describes "McNair" as "a twenty-one year old laborer." The 1990 record for Paul Parham reflects that Paul Parham had a bony fusion at the interphalangeal joint of the right thumb. Paul Parham's birthdate listed by the Pennsylvania Department of Corrections medical record is July 13, 1949, which means that he would have been forty in February1990.

The District Court denied Parham's motion and Parham timely appealed. This Court granted a Certificate of Appealability. "We exercise plenary review over the District Court's refusal to equitably toll [AEDPA's] statute of limitations." *Urcinoli v. Cathel*, 546 F.3d 269, 272 (3d Cir 2008).

## III.

Parham calls his motion a Rule 60(b) motion, and the Commonwealth argues that the motion should instead be treated as a second or successive habeas petition. Parham did not obtain an order from this Circuit authorizing a second or successive habeas petition. Because federal courts lack jurisdiction to consider a second or successive habeas petition if a petitioner does not obtain such an order, *Burton v. Stewart*, 549 U.S. 147, 157 (2007), the District Court would lack jurisdiction over the motion if it is indeed a second or successive habeas petition. We hold that the District Court had jurisdiction over Parham's Rule 60(b) motion.

In *Gonzalez v. Crosby*, the Supreme Court held that a 60(b) motion should be treated as a second or successive habeas petition if it "seeks vindication" of a "claim." 545 U.S. 524, 531 (2005). It defined a "claim" in this context as "an asserted federal

6

basis for relief from a state court's judgment of conviction." *Id.* at 530. Parham does not assert a claim on the merits because he does not attack the District Court's ruling on an asserted federal basis for relief. In this appeal, Parham seeks to equitably toll the habeas' statute of limitations with a gateway claim of actual innocence. "In a gateway case the court initially examines the question of whether a petitioner's procedural default should be excused . . . ." *Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010). If a petitioner meets the heavy burden described in *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995), he may proceed with procedurally defaulted constitutional claims, *House v. Bell*, 547 U.S. 518, 555 (2006). Thus, Parham seeks to show that the District Court's "previous ruling which precluded a merits determination was in error." *Gonzalez*, 545 U.S. at 532 n.4.

It is true that assessing Parham's gateway claim of actual innocence involves considering evidence that Parham alleges is new. But considering this "new" evidence does not transform a gateway claim into the assertion of a federal basis for relief. If we were to hold that a gateway claim of actual innocence can equitably toll the statute of limitations (which we expressly decline to do in this case), a petitioner would then need to litigate his substantive claims. This is true even for Parham's substantive claim of actual innocence, because a petitioner carries a heavier burden to succeed on substantive claim of actual innocence than the already high burden imposed by a gateway claim. *See Schlup*, 513 U.S. at 314.

7

**IV.**

To show that his procedural default should be excused with a gateway claim of actual innocence, a petitioner must first present "new, reliable evidence . . . that was not presented at trial." *Schlup*, 513 U.S. at 324. Even assuming that Parham has presented "new, reliable evidence," he fails to meet *Schlup*'s second requirement to "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Id.* at 327. *Compare Houck*, 625 F.3d at 96-97 (reasonable juror standard not met where new evidence bolsters but does not prove alibi), *with House*, 547 U.S. at 554 (reasonable juror standard "close[ly]" met where new DNA and evidence-control evidence undermined trial's forensic evidence and two witnesses testified that they had heard the victim's husband confess to the crime).

The alibi that Parham presented at trial – which the jury rejected – suffered from two major flaws. First, Parham could not show that he was the "Dylan McNair" who showed up for work on February 6, 1990. Second, even if the jury believed that Parham was Dylan McNair, it could have disbelieved Parham's alibi because there was no direct evidence that Parham was in Norfolk by 7:00 a.m. on February 6, 1990.

Parham's "new" evidence addresses, but does not resolve the first flaw. The "new" testimony of the FBI agent bolsters Parham's claim that he was "McNair" and worked at Magann in that week. The "new" medical records also bolster this claim, because the records support Parham's argument that he was the person injured in the accident. However, a reasonable juror could still easily disbelieve this claim. The doctor

8

examining "McNair" noted that he was twenty-one years old. A reasonable juror could easily conclude that this "McNair" was not Paul Parham, who was forty years old in February 1990.

Parham's "new" evidence does not address the second flaw. Neither the computer payroll record nor the employee index card records exactly when he arrived to work, and the agent was not even sure which week in February 1990 Parham worked at Magann, let alone his time of arrival each day. A reasonable jury could believe that Parham committed the early morning assault in Philadelphia and then arrived at work in Norfolk later that day.

Parham argues that the Commonwealth's case was relatively weak to begin with because it relied on a nighttime cross-racial identification. But Parham's argument here parrots his attorney's closing argument that was rejected by the jury. A reasonable juror could credit Baccari's testimony that a streetlight provided enough light to enable Baccari to see his assailant and identify him in a photo.

## V.

Because Parham has failed to make a credible gateway showing of actual innocence, we need not decide whether a showing of actual innocence can equitably toll 28 U.S.C. § 2244(d)(1), and if so, whether a diligence standard would apply. We also need not decide whether Parham's motion should proceed under Federal Rule of Civil Procedure ("Rule") 60(b)(2), Rule 60(b)(6), or Rule 60(d) because it fails under each of these avenues. Parham's motion fails as a Rule 60(b)(2) motion because it was

9

filed more than a year after the entry of judgment from which he requested relief. *See* Rule 60(c)(1). Parham's motion fails as a Rule 60(b)(6) motion because he has failed to show that it presents "extraordinary circumstances." *Gonzalez*, 545 U.S. at 535 (internal quotation marks omitted). And Parham has failed to show, as required for relief under Rule 60(d), that disallowing relief would "prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47 (1998).

## VI.

For the foregoing reasons, we will affirm the order of the District Court denying Parham's motion for reconsideration.

GREENAWAY, JR., *Circuit Judge*, dissenting.

By condoning Parham's tactic to proceed under Fed. R. Civ. P. 60(b), the majority offers solace to a category of litigants that our jurisprudence under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") would preclude from seeking relief in this Court. Less than a year after we denied his application to file a successive habeas petition to press his actual innocence claim for the second time, Parham, undeterred, tried again. Now in its third iteration, Parham sought to litigate his actual innocence under the guise of Rule 60(b), as a challenge to the District Court's resolution of his first habeas petition in which he brought this exact claim.

His latest attempt to elude successive habeas treatment has proved procedurally fruitful. The majority pauses only briefly to consider and reject the Commonwealth's argument that Parham's appeal from the denial of his Rule 60(b) motion should have been treated as a successive habeas petition under AEDPA. The majority proceeds to determine that Parham's evidence of actual innocence fails to satisfy the standard set forth in *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995), to permit him to revive his defaulted ineffective assistance of counsel claim.

Although I agree that Parham's actual innocence claim fails, I believe that consideration of the merits of Parham's actual innocence claim is an exercise in futility. I think that Parham's Rule 60(b) motion effectuated an improper end-run of AEDPA's conditions for filing a successive habeas petition. The District Court was without jurisdiction to consider his Rule 60(b) motion, and we are without jurisdiction to consider the propriety of that decision on appeal. I fear that the majority creates a procedural

blueprint for litigants seeking to have their successive habeas claims heard on the merits without yielding to the strictures that AEDPA imposes.  For this reason, I respectfully dissent.

## I.    Relevant Facts and Procedural History

In April 2005, Parham filed his first federal habeas petition in the District Court, pursuant to 28 U.S.C. § 2254.  Adopting the Magistrate Judge's Report and Recommendation, the District Court dismissed the petition as untimely, in May 2006.  The District Court rejected Parham's argument that he was entitled to equitable tolling of the statute of limitations based on actual innocence.  Although the District Court recognized that neither the Supreme Court nor this Court had ever recognized equitable tolling of the one-year statute of limitations in § 2244(d)(1) on the basis of actual innocence, the District Court determined that, in any event, Parham's evidence failed to meet the necessary threshold to demonstrate actual innocence.

In October 2009, Parham sought leave from this Court to file a successive habeas petition, again alleging actual innocence based on several pieces of "new" evidence.  We denied Parham's request in December 2009, concluding that Parham's new evidence of his innocence failed to satisfy § 2244(b)(2).[1]  Armed with two decisions addressing the strength of his actual innocence evidence, Parham was able to refuel and marshal *additional* evidence of his purported innocence.

---

[1] Notably, in his briefing, Parham omitted any reference to our denial of his previous request to file a successive habeas petition to press his actual innocence claim.

2

Instead of submitting another application for leave to file a successive habeas petition, in December 2010, Parham changed course and attached his third adaptation of his actual innocence evidence to a motion that he filed in the District Court. In this motion, titled "Independent Action to Obtain Relief From Judgment or Order Pursuant to Rule 60(b) F.R.Civ. P.," Parham argued that the District Court erred by dismissing as untimely his April 2005 habeas petition—the first federal petition he filed in this case—without considering the petition on the merits.[2]

While couched as a challenge to the District Court's dismissal based on AEDPA's statute of limitations, rendered over four years earlier, Parham made clear that he was not abandoning his previous attempts to prove his innocence. Part C of Parham's motion, titled "Pertinent Facts," argued once again the substance of his alibi on the day of the shooting. Specifically, Parham explained how each of the five pieces of "new" evidence attached to his motion gave credence to his alibi. After the District Court denied the motion, Parham filed a timely appeal.

## II.    *Gonzalez v. Crosby*

As an initial matter, we must determine whether Parham's Rule 60(b) motion constituted a successive habeas petition that was brought without adherence to AEDPA's mandates.

In *Gonzalez v. Crosby*, 545 U.S. 524 (2005), the Supreme Court provided a framework for district courts to employ when determining whether a motion couched under Rule 60(b) should be treated as a successive habeas petition under AEDPA, 28

---

[2] Parham did not identify under which provision of Rule 60(b) he sought relief.

3

U.S.C. § 2244(b).[3] The Court iterated that § 2244(b) applies when a Rule 60(b) motion presents one or more "claims." *Gonzalez*, 545 U.S. at 530. As the Court explained, a Rule 60(b) motion "that seeks to add a new ground for relief," or a Rule 60(b) motion that "attacks the federal court's previous resolution of a claim *on the merits*," both proffer claims that fall within the purview of § 2244(b). *Id.* at 532. On the other hand, a claim is not present when a Rule 60(b) motion "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Id.*

The Court provided several examples of Rule 60(b) motions that present claims within the meaning of § 2244(b) and are subject to AEDPA's restrictions on successive habeas petitions. Relevant to Parham's case is the scenario where the inmates seeks relief under Rule 60(b) on the basis of newly discovered evidence. *See* Fed. R. Civ. P. 60(b)(2). Although labeled a Rule 60 motion, the Court determined that "[a] habeas petitioner's filing that seeks vindication of such a claim is, if not in substance a 'habeas corpus application,' at least similar enough that failing to subject it to the same requirements would be 'inconsistent with' [§ 2244(b)]." *Gonzalez*, 545 U.S. at 531.

---

[3] AEDPA imposes certain procedural and substantive requirements on successive habeas petitions. First, a claim that has already been adjudicated by the district court on the merits must be dismissed. Second, a claim that has not already been adjudicated by the district court on the merits must be dismissed unless: (a) it relies on either a new and retroactive rule of constitutional law or reasonable diligence could not have uncovered the factual predicate to support the claim; and (b) there is clear and convincing evidence of actual innocence. Finally, a district court cannot consider a successive habeas petition until the court of appeals determines that a *prima facie* showing has been made on the first and second requirements. *See* 28 U.S.C. § 2244(b)(1)-(3).

4

At issue in *Gonzalez* was a Rule 60(b) motion that the Court concluded did not present a claim under AEDPA—a challenge to the District Court's determination that AEDPA's statute of limitations had run. *Id.* at 533. The Court reasoned that a challenge based on a misapplication of a federal statute of limitations did not "substantively address[] federal grounds for setting aside the movant's state conviction." *Id.*

### III.    Parham's Rule 60(b) Motion Presents a "Claim" Under AEDPA

The majority is quick to dismiss any notion that Parham's Rule 60(b) motion constituted a successive habeas petition based on the rationale of *Gonzalez*. I am not so convinced. Indeed, Parham's Rule 60(b) motion precludes a straightforward application of *Gonzalez*, bearing the hallmarks of both a procedural motion that can proceed under Rule 60(b) and a substantive motion that presents a "claim," as contemplated by AEDPA. On the one hand, Parham appears to challenge the District Court's dismissal predicated on AEDPA's one-year statute of limitations, which he claims prevented a merits determination.[4] The *Gonzalez* Court concluded that such a challenge to a procedural ruling was "not the equivalent of a successive habeas petition," *id.* at 535-36, because it was not a substantive basis for relief on federal grounds, *id.* at 533.[5]

---

[4] Of course, Parham ignores the fact that, in determining that his first habeas petition was untimely, the District Court reasoned that Parham was not entitled to equitable tolling based on actual innocence. This conclusion was made possible only because the District Court considered Parham's actual innocence evidence and found it to be unconvincing.

[5] I also recognize that Parham's claim of actual innocence "does not by itself provide a basis for relief." *Schlup*, 513 U.S. at 315. Instead, Parham must make the requisite showing of actual innocence as a gateway to reviving his defaulted constitutional claim. *Id.*

On the other hand, Parham attached five pieces of "new" evidence to his Rule 60(b) motion, some of it evidence that Parham had previously attached to his application for leave to file a successive habeas petition. As the *Gonzalez* Court made clear, the presentation of newly discovered evidence is akin to mounting a "claim" that must be brought in accordance with the requirements of AEDPA. *Id.* at 531.

The majority devotes only two sentences of analysis to this inherent tension in *Gonzalez*, simply stating, without support, that Parham's "'new' evidence does not transform a gateway claim into the assertion of a federal basis for relief." (Majority Op. at 8.) For the majority, Parham was permitted to present his new evidence in a Rule 60(b) motion without the need to comply with AEDPA.

I believe that this conclusion is antithetical to the spirit of *Gonzalez* and, more importantly, in contravention of this Court's precedent. The Federal Rules of Civil Procedure apply to habeas proceedings "only 'to the extent that [they are] not inconsistent with' applicable federal statutory provisions and rules." *Gonzalez*, 545 U.S. at 524 (quoting 28 U.S.C. § 2254). This principle is grounded in the understanding that Rule 60(b) cannot be used as a mechanism to circumvent the more stringent standards that AEDPA imposes on successive habeas petitions. *Id.* at 531-32. Permitting Parham to proceed under Rule 60(b) violates this governing principle.

Parham makes clear in his Rule 60(b) motion that he continues to contest the District Court's decision, in its May 2006 ruling, that his actual innocence claim was not meritorious. In fact, Parham sought to use his Rule 60(b) motion as an opportunity to not only reconfigure and supplement his actual innocence evidence, but to explain how each

6

piece of evidence supports his alibi. If Parham were challenging in his Rule 60(b) motion only "some defect in the integrity of the federal habeas proceedings" that precluded a merits determination, *id.* at 532, as the majority necessarily concludes, what purpose would it serve for Parham to include "new" evidence of his innocence?

The only purpose I can discern is the obvious one—to convince the District Court that he is actually innocent. Having already litigated his actual innocence in his first federal habeas petition, there is no doubt that AEDPA applies to any successive attempts to demonstrate his innocence. *See* 28 U.S.C. § 2254(b)(2)(B)(ii). Parham's motion "seeks vindication of . . . a claim [that] is, if not in substance a 'habeas corpus application,' at least similar enough that failing to subject it to the same requirements would be 'inconsistent with' [§ 2244(b)]." *Gonzalez*, 545 U.S. at 531. The majority's decision, however, condones the practice of litigants who continue to foist ever-evolving evidence of their actual innocence upon district courts, under the rubric of Rule 60(b), without paying even lip service to AEDPA. Equally troubling is the prospect that a district court would be moved by this "new" evidence of an inmate's actual innocence. If this evidence were presented in a Rule 60(b) motion, would a district court reconsider its previous rejection of the inmate's actual innocence claim or suggest that the inmate file a successive habeas petition? Either of these situations would be untenable.

Even assuming *Gonzalez* does not definitively resolve whether Parham's Rule 60(b) motion constituted a successive habeas, our decision in *Blystone v. Horn*, 664 F.3d 397, 413 (3d Cir. 2011), removes any remaining doubt. In *Blystone*, an inmate filed a Rule 59(e) motion seeking to present newly discovered evidence to support a claim of

7

prosecutorial misconduct related to the guilt phase of his capital trial. 664 F.3d at 409. On appeal from the denial of the motion, we addressed whether the inmate's Rule 59(e) motion presented a claim under AEDPA and, if so, whether that claim had to be brought in a successive habeas petition. *Id.* at 411.

Applying *Gonzalez*, we determined that "a motion 'seeking leave to present newly discovered evidence in support of a claim previously denied' advances a claim and is, therefore, a habeas corpus petition." *Id.* at 413 (quoting *Gonzalez*, 545 U.S. at 531). As we noted, the inmate "made evident his purpose to seek vindication of previously denied claims through the presentation of new evidence," *id.*, "'by taking steps that lead inexorably to a merits-based attack on the prior' judgment on his habeas petition," *id.* (quoting *Post v. Bradshaw*, 422 F.3d 419, 424-25 (6th Cir. 2005)).[6]

Parham's case is analytically no different from *Blystone*. By presenting new evidence of his actual innocence and arguments to support the weight of this evidence, Parham laid the groundwork for a challenge to the District Court's previous rejection of his actual innocence claim. Further underscoring Parham's clear intent in his Rule 60(b) motion is the fact that we already denied Parham's request to pursue his actual innocence claim through a successive habeas petition. With this required avenue of relief closed, Parham now seeks to do under Rule 60(b) what he could not do through the mandates of AEDPA.

---

[6] Although the inmate's Rule 59(e) motion presented a claim under AEDPA, we ultimately concluded that the motion was not a successive habeas petition because the inmate proceeded pursuant to Rule 59(e), not Rule 60(b). *Blystone*, 664 F.3d at 413-14. Because Parham proceeded under Rule 60(b), this would not prevent his Rule 60(b) motion from being a successive habeas petition.

8

As a result, I cannot avoid the conclusion that Parham attempted to advance a claim that must be brought in a successive habeas petition. Because Parham did not seek leave in this Court to file his successive habeas petition, the District Court should have dismissed the Rule 60(b) motion for lack of jurisdiction, and we, in turn, have no jurisdiction over this appeal. *See Blystone*, 664 F.3d at 412 ("A petitioner's failure to seek such authorization from the appropriate appellate court before filing a second or successive habeas petition acts as a jurisdictional bar." (internal quotation marks and citation omitted)). As such, I am compelled to respectfully dissent.