*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0288p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

—————————

REGINALD BROOKS,

*Petitioner-Appellant,*

*v.*

No. 11-4142

DAVID BOBBY, Warden,

*Respondent-Appellee.*

—————————

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 01-02461—Donald C. Nugent, District Judge.

Decided and Filed: November 9, 2011

Before: SUTTON, McKEAGUE and GRIFFIN, Circuit Judges.

—————————

**COUNSEL**

—————————

**ON BRIEF:** Michael J. Benza, Chagrin Falls, Ohio, Alan C. Rossman, OFFICE OF
THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Petitioner. Thomas E.
Madden, Stephen E. Maher, OFFICE OF THE OHIO ATTORNEY GENERAL,
Columbus, Ohio, for Appellee. William S. Lazarow, Columbus, Ohio, for Amicus
Curiae.

—————————

**OPINION**

—————————

PER CURIAM. Reginald Brooks murdered his three sons as they lay sleeping
in their Cleveland home on the morning of March 6, 1982, two days after his wife served
him with divorce papers. An Ohio court sentenced Brooks to death for the crimes. After
unsuccessfully challenging his conviction and sentence on direct appeal and collateral
review in state court, Brooks filed a petition for a writ of habeas corpus. *See* 28 U.S.C.
§ 2254. The district court denied Brooks' petition, and we affirmed. *Brooks v. Bagley*,

513 F.3d 618, 632 (6th Cir. 2008).  On March 1, 2011, the State of Ohio scheduled Brooks' execution for November 15, 2011.

On September 23, 2011, Brooks filed a motion in the district court to reopen his habeas proceeding under Rule 60(b)(6) of the Federal Rules of Civil Procedure.  Brooks alleged (1) that his two habeas attorneys were ineffective because they did not adequately investigate and present all possible claims, and (2) that one of his habeas attorneys, Kevin Spellacy, was particularly ineffective because he labored under a conflict of interest, namely that Spellacy's father, a state court judge, denied some of Brooks' claims on state collateral review.  The district court denied Brooks' Rule 60(b) motion and an accompanying motion to stay his execution on October 19, 2011.  Brooks appealed the district court's order and filed a motion in this court to stay his execution.

We apply a four-factor test in resolving such stay motions:  "(1) whether there is a likelihood he will succeed on the merits of the appeal; (2) whether there is a likelihood he will suffer irreparable harm absent a stay; (3) whether the stay will cause substantial harm to others; and (4) whether the [stay] would serve the public interest." *Bedford v. Bobby*, 645 F.3d 372, 375 (6th Cir. 2011).  In addition to these four considerations, we also consider the timeliness of the petitioner's claims.  "[T]here is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Nelson v. Campbell*, 541 U.S. 637, 650 (2004).

There are five problems with this stay request.  *First*, Brooks waited too long to file his Rule 60(b) motion.  He has known about the factual underpinnings of his conflict-of-interest argument since at least July 24, 2006, when he filed a motion in this court to remand his first federal habeas petition to the district court based on Mr. Spellacy's conflict of interest (which we denied).  And he has known about his habeas counsel's alleged failure to investigate and present his claims since at least June 14, 2006, when he filed a motion in this court seeking a certificate of appealability on the issue (which we also denied).  Brooks could have filed a Rule 60(b) motion in the district court raising these claims at any time during the last five years, but instead he

waited until September 23, 2011—53 days before his scheduled execution—to do so. Brooks offers no justification for this delay. This unexplained, and seemingly inexplicable, delay in filing his motion by itself justifies denying the stay. *See Nelson*, 541 U.S. at 650; *Bedford*, 645 F.3d at 375–77.

*Second*, even if these claims were not late, the law-of-the-case doctrine bars them. *See United States v. Haynes*, 468 F.3d 422, 426 (6th Cir. 2006). Brooks raised both claims in his first federal habeas appeal to this court and in his certiorari petition to the United States Supreme Court. *See* Petition for Certificate of Appealability (June 14, 2006) at 150–65; Motion to Remand (July 24, 2006); Brief on the Merits (July 18, 2007) at 74–93; Petition for Rehearing and En Banc Review (Feb. 19, 2008) at 13–15; Petition for a Writ of Certiorari (Nov. 6, 2008). We rejected them. A litigant may not raise arguments during the first federal habeas proceeding, lose those arguments (because he could not show prejudice), then raise the same arguments based on the same evidence in a Rule 60(b) motion.

*Third*, and relatedly, even if the claims were not late and even if they were not previously litigated, Brooks cannot overcome the bar on second or successive habeas petitions. When a Rule 60(b) motion "seeks to add a new ground for relief," whether akin to or different from the claims raised in the first petition, the courts generally treat it as a second or successive petition. *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). As an example of just such a motion, *Gonzalez* cited *Harris v. United States*, 367 F.3d 74 (2d Cir. 2004), in which a habeas petitioner sought to reopen his habeas proceeding because his attorney ineffectively failed to raise a claim. *Id*. at 80. Brooks wants to do just that—to reopen his habeas proceeding so that he can litigate claims that the alleged ineffectiveness of his attorneys prevented him from fully litigating in the first habeas go-round. Not all Rule 60(b) motions in habeas cases, to be sure, amount to successive petitions. Those that do not seek to add a new ground for relief but instead raise "some defect in the integrity of the federal habeas proceeding," such as "[f]raud on the federal habeas court," are not successive petitions. *Gonzalez*, 545 U.S. at 532 & n.5. But an "attack based on . . . habeas counsel's omissions"—just what Brooks raises

here—"ordinarily does not go to the integrity of the [earlier federal] proceedings." *Id.* at 532 n.5. Neither of Brooks' ineffective-assistance claims amounts to fraud on the court. And the claims, as presented, do not undermine the "integrity" of the first federal habeas proceeding. The first theory—general ineffective assistance of habeas counsel—is a plain-vanilla successive petition designed to do nothing more than attack his earlier counsel's omissions. *See id.* at 532; *Post v. Bradshaw*, 422 F.3d 419, 424–25 (6th Cir. 2005). If the successive-petition bar does not limit this theory, it limits nothing. It is possible that the second theory—that a conflict of interest led to the ineffective assistance of one of his habeas counsel—could under sufficiently egregious conditions haunt the integrity of a first federal habeas proceeding. But that is not so here. There were two counsel, not one, and both counsel challenged the relevant state court rulings. Perhaps more importantly, the issue came to light during the appeal from the first proceeding, making it difficult to say that a second habeas proceeding is needed to correct the integrity of the first proceeding. Brooks nowhere attempts to argue that he can satisfy the requirements for allowing a successive petition. *See* 28 U.S.C. § 2244(b)(2). Nor do we see any way he could do so.

*Fourth*, even if the claims were not late, law-of-the-case barred and successive-petition barred, they fail to account for a pertinent congressional directive. "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Our court, not surprisingly, has construed this language to mean what it says: to bar a Rule 60(b) motion based on the ineffectiveness of habeas counsel. *Post*, 422 F.3d at 423. Brooks has not challenged the constitutionality of § 2254(i), and we see no way to escape the clutches of this statutory bar, at least when it comes to his conventional ineffective-assistance claim and possibly (we need not decide) with respect to his conflict-of-interest claim.

*Fifth*, even if we overlooked all of these problems, Brooks has no chance of success on the merits with respect to either theory, which alone suffices to reject the stay. *See Workman v. Bredesen*, 486 F.3d 896, 911 (6th Cir. 2007). Brooks claims that

his two habeas attorneys did not diligently investigate and present his claims, but they filed an exhaustive 73-page habeas petition raising 20 claims and a still-more-exhaustive 136-page reply brief responding to the State's arguments. True, they did not raise every conceivable claim. But "winnowing out weaker arguments . . . and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective . . . advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). Making matters worse, Brooks to this day does not tell us what unraised claim had a meaningful chance of prevailing, a deficiency that necessarily establishes a lack of prejudice.

Brooks' conflict-of-interest claim concerning Kevin Spellacy—itself a species of an ineffective-assistance claim, *see Cuyler v. Sullivan*, 446 U.S. 335, 345 (1980) (characterizing a conflict-of-interest claim as one alleging denial of "effective assistance of counsel")—fares no better. To prevail on this claim, Brooks must demonstrate an actual conflict of interest that adversely affected his attorney's performance. *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002); *Cuyler*, 446 U.S. at 350. Even if we assume that Spellacy had a conflict because his father was one of the many state court judges who rejected Brooks' collateral claims, Brooks has not shown that the conflict adversely affected Spellacy's performance by "influenc[ing] . . . his basic strategic decisions." *Mickens*, 535 U.S. at 172. Brooks submits that family loyalty prevented Spellacy from challenging the state-court decisions (1) rejecting Brooks' ineffective-assistance-of-appellate-counsel claim and (2) denying Brooks' request for a competency evaluation at state expense during his state collateral challenge. But the habeas petition that Spellacy (and his conflict-free co-counsel Patrick D'Angelo) filed in the district court showed no such restraint. They filed an ineffective-assistance-of-appellate counsel claim, R. 21 at 39–49, which the district court rejected on the merits. R. 30 at 89–91. Although Brooks' two habeas counsel did not challenge the denial of a state-funded competency evaluation, they had a good reason for opting not to do so, quite apart from family loyalty. Any challenge would face a long and steep climb. As the Ohio Supreme Court noted in rejecting the same request, Brooks' competency at that stage was "simply not relevant" because the Federal and State Constitutions do not require that a defendant be competent to pursue state post-conviction relief. *State v. Brooks*, 751 N.E.2d 1040,

1042 (Ohio 2001). Brooks offers no United States Supreme Court precedent to the contrary or for that matter any federal authority to support the idea that the United States Constitution requires a State to pay for a competency evaluation during state collateral review. Because Brooks cannot show that Spellacy's purported conflict adversely affected his performance, he is not entitled to a presumption of prejudice. *See Strickland v. Washington*, 466 U.S. 668, 692 (1980). Nor has he pointed to any prejudice on his own. Indeed, during Brooks' first appeal we denied his motion to remand his habeas petition based on this alleged conflict of interest because he did not show any prejudice then either. *See* Court Order (Oct. 31, 2006). Nothing has changed.

None of Brooks' contrary arguments overcomes these problems. Brooks claims that *Post* was wrong to conclude that 28 U.S.C. § 2254(i) bars this kind of challenge to the performance of habeas counsel. 422 F.3d at 423. But *Post* merely applied the statute's straightforward language, giving it the meaning it unambiguously has. Brooks' habeas petition is "a proceeding arising under section 2254," and his Rule 60(b) motion seeks "relief" based on "[t]he ineffectiveness or incompetence of counsel during Federal . . . collateral post-conviction proceedings." That is just what § 2254(i) bars.

Brooks adds that we should stay his execution pending the Supreme Court's decision in *Martel v. Clair*. But the issue in *Clair*—the standard that a federal court must apply when a habeas petitioner seeks substitute counsel under 18 U.S.C. § 3599—has no bearing on Brooks' Rule 60(b) motion. *See Clair v. Ayers*, 403 F. App'x 276, 277–78 (9th Cir. 2010); Brief for Petitioner at i, 13, *Martel v. Clair*, No. 10-1265 (U.S. Sept. 9, 2011), 2011 WL 369341. The Court's decision in *Clair* is unlikely to say anything about any of the problems dogging Brooks' motion, let alone all five of them. (In his reply brief, Brooks also suggests that we should wait on the Supreme Court's decisions in *Martinez v. Ryan* and *Maples v. Thomas*, Reply Br. at 10–11, but those cases deal only with state post-conviction proceedings and likely will say nothing about the duties of federal habeas counsel).

When all is said and done, Brooks seeks an unusual remedy—a second *first* federal habeas hearing. That he seeks to do so on ineffective-assistance grounds makes

the request all the more rare. The Constitution does not guarantee counsel on collateral review, *see Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), and 28 U.S.C. § 2254(i) prohibits habeas claims premised on the ineffective assistance of habeas counsel. Even if allegations of a conflict of interest (affecting one of two habeas lawyers) could alter or suspend many of these tenets of federal habeas law, a point we need not decide, we see no cognizable path for granting a second first federal habeas proceeding in the absence of a showing that the conflict of interest mattered—that it adversely affected the representation provided to the claimant. Indeed, even a *presumption* of prejudice, the supposed holy grail of Brooks' claim, must account for what the conflicted and un-conflicted lawyer did. To this day, Brooks' new (highly effective) counsel have unearthed nothing that offers any hint that a second federal habeas proceeding would come out differently from the first federal habeas proceeding.

For these reasons, we deny Brooks' motion for a stay of execution.